We're ready to hear argument in the case of United States v. Perkins. Ms. Lyston, did I say that correctly? You did, your honor. Thank you. All right. We'll be glad to hear from you. Thank you, your honor. May it please the court, I'm Jenny Lyston for Christopher Perkins. Your honors, to revoke conditional release under 18 U.S.C. section 4246F, the district court must undertake two tasks. First, the district court must determine whether the released person has failed to comply with the prescribed treatment regimen. And if the answer to that is yes, then the court proceeds to the second task, which is determining whether in light of that failure to comply with the prescribed treatment regimen, that person now poses a substantial risk of injury to persons for property. Here- That's what this case is about. Judge Brett says, you know, looks to him, all you got to do is have the violation of it. And I'm supposing he gets that from the fact that in the first instance, when you put someone in, my preponderance of evidence, I guess, that ultimately when you seek, when they seek release, they have two types of release. One is conditional and one is unconditional. And the unconditional occurs if the court is not able to determine that the, that prong that's dealing with substantial risk cannot be fully satisfied. So he has to put conditions on it, right? So in essence, if one has unconditional release, that necessarily tells you that the court could not find, in order to give him, if he gets conditional release, it tells you could not give him unconditional release because he couldn't determine that he was no risk to the community or to himself, right? So to obtain conditional release, they have to conclude that this person will be, will not pose a risk, substantial risk of injury to property, as long as they comply with the prescribed treatment regimen. Not necessarily. We agree on that. What I'm trying to differentiate is then what does it mean to get unconditional release? That means you can release them because they pose no risk, right? Correct. They're, they pose no risk and they don't have to comply with any sort of prescribed treatment regimen. Conditional release is when- So the only reason you would go with conditional release is because you've determined there is some risk, but there are conditions that can abate the risk. Is that right? That person, as long as they comply with the prescribed treatment regimen, which are the conditions prescribed by the medical providers, such as medication and going to see your psychologist, as long as they comply with those prescribed treatment regimen, they are not dangerous and they do not pose a risk. So that's the problem Judge Britt had, and I understand, we've got to have the trial judges on this, and I'm sure the panel, and I understand where you're going, but that's the problem Judge Britt was having, is that he's saying, well, if he was no risk, he'd have gotten unconditional release, but he got conditional release, so you let him out on condition of him complying with the conditions. If he doesn't comply with the conditions, then that same risk he was when he first went in exists. So from his perspective is, if you violate it, then there's nothing to abate that risk anymore. Respond to that. I mean, that's where he needs some help. He asked us, if you might have read, Judge Britt is pretty direct in coming to the appellate court and asking for guidance. Judge Britt said he wants some guidance on this, he doesn't understand that, so help us make it plain to him in light of Taylor and what we've done here in this circuit. Absolutely. So I would just say, Your Honor, that violation of ancillary conditions that have nothing to do with risk. So for example, one of the conditions placed on Mr. Perkins was that he not incur new credit card charges without the permission of his probation officer. That has nothing to do with his risk, right? That doesn't have anything to do with him causing substantial injury to persons of property. So ancillary conditions like that, although in certain conditions may perhaps inform the dangerousness assessment, violation of ancillary conditions without a violation of the actual treatment regimen does not warrant revocation under 4246F and the statute could not be clearer on that. What do you say happened here? Because this case came back to Judge Britt on remand, and he makes a finding, he recites the words of the statute, and he says the violations heretofore set out, and he had gone through half a dozen of them, some of which arguably do relate to medical, psychiatric or psychological care, and he says those violations would create a substantial risk in the terms of the statute. So he made a finding that complies with the terms of the statute. Is your argument that it's factually incorrect, there's a lack of a nexus, or what exactly do you say is the error here? So the legal error here is that Judge Britt erroneously believed that a violation of any of the conditions, even the conditions that have nothing to do with the prescribed treatment regimen and nothing to do with risk, was sufficient to find that he violated and sufficient to find that he was dangerous. So and you're right, Judge Wynn, Judge Britt was very open about his confusion on this point. On JA 138, Judge Britt says- I will understand his confusion, and that's the point. I guess what you're saying first, we have to determine if it's an ancillary condition, then you got one way to do it. But it seems like if you got something like what he has here, he missed psychiatric appointments and medications, how can you say that doesn't affect the risk? I mean, if you don't do that, that looks problematic to me. So Judge Wynn, those were the only two conditions, his medication, his failure to take medication on February 4th and February 5th, the Depakote, and the alleged failure to see his psychiatrist on December 18th, 2018. Those were the only conditions that go to the prescribed treatment regimen. And what Judge Britt failed to do though then, because he believed that you violate, then you're automatically dangerous, you automatically go back. He failed to tie that risk, the violations, to any sort of risk. He did not then go to that second task and assess whether those isolated violations then meant that Mr. Perkins was now at risk. For example, the government didn't present any sort of medical testimony to show that Mr. Perkins' medication had reached any sort of sub-therapeutic level, as opposed to the last time. The last time he was revoked, Your Honor, you'll see on JA 220, he was revoked because the probation officer had blood tests that showed that he was not complying with medication and his medication had reached sub-therapeutic levels and that he was engaging in some problematic behavior. This case, however... Well, counsel, let me ask you this. I think I'm following Judge Wendt's line of questioning here. You're right. Judge Britt does start out and he says that he felt like a violation of the order of conditional release is itself the reason to revoke conditional release. To me, in the abstract, that makes sense. That's not what the statute says, so we have to go farther than that. So, I'm trying to understand exactly what it was Judge Britt additionally was supposed to do, because if I look at it in the abstract, that, as Judge Wendt indicated earlier, somebody had to do some fairly serious things in order to have a civil commitment made, and it would seem to me, again in the abstract, if that person is supposed to see their psychiatrist and they don't do it, and they're supposed to take their medicine and they don't take it, what other explanation of nexus do you say the law requires in that circumstance? I think you need to present some sort of evidence to show that because of that person's failure to comply with the prescribed treatment regimen, the failure to take those two doses out of the 364 other doses that he took, that failure to take the two doses now means that Mr. Perkins poses a risk. I think you need to show that that failure to go see the psychiatrist on December 18th, which of course we don't even agree that happened, but for purposes of our argument today, let's assume that he missed that appointment. You need to show that that in turn made him dangerous, especially when he was receiving and the government conceded that he was getting regular psychiatric care. If you are on the other side at the hearing, is it your view that in order for the revocation to be legitimate, the government should have called the psychiatrist and have the psychiatrist testify because he didn't come to see me, he's going to go hurt somebody or burn down a building. Do you have to have that kind of evidence? I think that in cases like this, where there's so little evidence of any sort of substantial risk that yes, absolutely, the government needed to present some sort of expert medical testimony or a blood test or something to show that he now poses substantial risk of injury to persons of property and the government did not present anything like that. And what's more is that it is disturbing that Judge Britt is making these findings to show that he violated, for example, by leaving the district and your honor, Judge Britt never tied, as this court said you have to do in Taylor and I understand that Taylor is unpublished but the court, this case was specifically remanded in light of Taylor. Taylor says the district court, Taylor reversed and remanded a conditional release order and said the district court failed to make any factual findings as to how Taylor's failure to comply with the 24-hour reporting rule would pose a risk to someone as required under 18 U.S.C. section 4246F. Here for example, Judge Britt failed to explain how Mr. Perkins' emergency transfer by ambulance to another district for potentially life-saving measures showed that he posed a risk. The same thing is true- I'm going to ask you, and that sort of creates the problem we have here. As I said, there are two ways in which he could have gotten out. One would have been unconditional, the other is conditional. He has a conditional release, which says in effect, we're going to let you out if you comply with these conditions and your main argument seems to be, well, you can make conditionals but they may be ancillary conditions so they don't really abate the whole reason for making the conditioning, and that is to make sure he's not a substantial risk. That really calls into question, why have conditions up there if it doesn't deal with the whole issue of why he's not being unconditionally released? You have to make some initial belief that they are related, but let's stick with the medication and the psychiatrist visit. We can minimize it or make it higher, whatever, but most of us can agree that probably has something to do with whether or not he's a substantial risk. Once he violates it, and you say there's no evidence, he was already there because he's a substantial risk, it's been abated because of these conditions he's now violated, why is it the government's duty now to come up and say, well, he's a risk? They've already shown he's a risk, and the only reason he's out now is because he has these conditions. Why wouldn't the defendant or the petitioner be put in a position that says, wait a minute, I did violate him, but it doesn't mean I created a risk because the amount of medication I took didn't make a difference, and I have a witness here to prove that, or I didn't do that. You can't really separate the two, and it makes it difficult to do so when you look at the reason he's on these conditions here, and that's probably where Judge Britt is going. He's looking at this thing. By the way, Judge Britt lived with this case. He's been living with this case for years. Not that it should be relevant, but we know Judge Britt, and Judge Britt goes out of his way to try to do the right things on these cases, and he's trying to figure out what makes sense here. He also said, I think he told him, well, it doesn't mean you can't come back and get out in the future, for which I guess there's an opportunity for him to do, so I assume he's still committed. Is that right? He is still committed, Your Honor. And that opportunity to come back for another hearing before Judge Britt exists. Yes, Your Honor, and in fact, Judge Britt sort of indicated, which I think goes to show that he didn't actually think that Mr. Perkins posed a substantial risk. He said, well, you may very well be ready for conditional release again right at this moment, but he was focusing on the fact that Mr. Perkins had lost his spot at Fern Terrace, right? That was the focus, really, of most of Judge Britt's explanation as to why he was revoking Mr. Perkins. He was concerned- So you can't come back and ask for him to get an unconditional or conditional release even now, and I assume part of that will be when you go back and ask for the next level, the unconditional release, you're not at revocation, you're back at seeking unconditional release or conditional release, then that burden would be on the defendant. Is that right? To show he's entitled to conditional or unconditional release? Yes, to conditional release. It would be- So why wouldn't you, all of this evidence that you say now exists to show that he doesn't pose a risk, why wouldn't you just simply just file and say, Judge Britt, here's evidence to show he's not a risk? That's not tied to it at all because that's just him going back and forth, and the medication didn't mean a difference because he had a good excuse, whatever was there. So why is that not available? That is potentially available in a future hearing, however, we're talking about this hearing, whether revocation was appropriate in this case, and it simply wasn't, and we'd like to make it very clear to Judge Britt that he can't revoke someone based on a violation of conditions that have nothing to do with the prescribed treatment regimen, and nothing to do with any sort of risk. And that is based on our Taylor case, or the case, the unpublished opinion, you mentioned it? No, Your Honor, that's based on the statute itself, and on- Because the statute has that language in it that talks about substantial doing it at the same time. It is a little confusing. It is confusing when you look at it. It's a failure to comply with the prescribed treatment regimen. Failure to comply with, say, a condition, an ancillary condition that says you have to report credit card charges, that's not sufficient to revoke someone. That is where Judge Britt is getting confused. He's also getting confused about the fact that, all right, if someone loses their housing, like Mr. Perkins did, that's not a reason to revoke. That's a reason- Well, you know, I want to end with just this thought. I'm trying to, I think we're trying to do the right thing here, but it's kind of, it's a touch and go situation. Judge Britt's been working on this case for years and years. We the appellate court, we can make these rules up and follow the statute right by the T, and I think you're right. The statute does indicate that that should be done. The problem is, is you go back and say let him out, then, I mean, if he is a substantial risk or whatever, I mean, that's kind of, I don't feel comfortable as the appellate court doing it. Are you asking us just to remand it to Judge Britt for further consideration only? Not for us to do anything other than that, right? I would like for it to go back to Judge Britt with, as he requested, additional guidance from this court about exactly the type of risk assessment that he is supposed to be making, what he can and can't consider in determining- And if he gives a blanket statement that, well, one of the conditions, two of the conditions, he didn't go to a psychiatrist to pay his appointment, he didn't do his medication, and based upon that, those are things that I imposed previously that would help to abate the risk, and he did not do it, and therefore, the risk now exists. Is that going to be sufficient? I don't think that's sufficient here, Your Honor. The government can always present perhaps more evidence at remand. I think we're going to have to show his presence- What if he then turns to you and he says to the defendants, says, okay, that looks like it's not a, that you are now a risk. Do you have anything to show us that he's not a risk? What happens then? Oh, we have, there's a lot of evidence here that- So then you would then come forth with something, but my question is, would Judge Britt be out of line to say that? That I put those conditions on specifically to abate this substantial risk. He violated those specific conditions for which I can tell you there's a nexus between me doing it as a judge and it occurring, and he's now violated, and so it looks to me as though the risk is back. Now, I ask you as a defendant and trial judge, Judge Britt, do you have any evidence to suggest otherwise? Would that be proper? So the burden is always on the government. I got that, but I want to know the answer to that question. I got your position on it, but I just want to know would it be proper, because he's trying to do the right thing, and he's saying, okay, if he's not a risk, he's telling you it looks to me like he's a risk, because this is the reason I put this on in the first, same judge, but now it's on you. Do you have something to tell me that is not a risk? Is that proper? I think that would, I would think that would be appropriate, but however, the burden is on the government, and the government did not present anything to show that his failure to take Depakote on two isolated occasions, and a single failure to visit the psychiatrist when he was getting active psychological care is sufficient to create a substantial risk of injury to persons of property, and your honor, I know that I'm over my time, so I'll save the rest for rebuttal. Thank you. All right. Thank you very much, counsel. It might be useful, at least for me, on rebuttal, and as government counsel begins the argument, that we can obviously deal with cases on an individual basis, but at the appellate level, we're making rules that go beyond a single case, so I'm having difficulty finding out what rule we're supposed to make here that goes beyond the specific facts of this case, so any light either counsel can shine on that would be very helpful. And I would say, I wholeheartedly concur with Judge Agee. I think Judge Britt knows this isn't going to be the last case he sees of this genre, and he is thinking about cases down the road and clear guidance on it. Thank you, Judge. Ms. Petrie, did I say that correctly? You did, Your Honor. All right. Let's see if you can help us out here. Thank you, Your Honors. Jenna Petrie for the United States of America, and may it please the Court. This Court is asked today to clarify what is necessary to revoke the conditional release of a mentally ill and dangerous person who has violated their conditional release in the community. This Court should affirm the findings of the District Court and find that the lower court properly found that Mr. Perkins had violated the terms of his conditional release and that no further commentary was necessary from the District Court because the District Court provided sufficient evidence in the record in considering the record as a whole to find that Mr. Perkins had not only violated the conditions of his release, but that in light of his violation. Well, if that is the case, as you suggest, that he needs say nothing else, it appears to me that you said quite a bit. In fact, the United States had a beautiful set of findings, in fact, beginning on page 18 of its brief and spanning for some pages. So why is it not the case that you could just have simply relied upon Judge Britt's findings, whatever they may be? That's because as this Court has noted several times and Your Honors have pointed out, Judge Britt has been with this case since 2009. He's wholly familiar and the record below includes all of the information that Judge Britt took into consideration at that June 2020 hearing. And so while his findings on the record are brief, but that's consistent with this Court's holding in United States v. Taylor from 2016, they do sufficiently address the issue because the District Court is not required to place facts related to Mr. Perkins' violations on the record in order to revoke his conditional release where the full record before the Court supports the Court's findings. And that's consistent with this Court's holding in United States v. Cornell-Taylor from 2009. And so what the Court considered and the reason why the government's findings of fact are so full is to give this Court the full picture of what Judge Britt already knew at the lower court and what he knew at the June 2020 revocation hearing. And that's a number of factors that are not being identified specifically in the record from the hearing, but that would have played a part in Judge Britt's decision. Just take a minute or two and tell us what those are. Absolutely, Your Honor. So as this Court knows, Mr. Perkins was found mentally ill and dangerous consistent with the court's ruling on June 22, 2042, 46, and 2009. His criminal violations, his criminal conduct was actually that he was stalking and harassing and threatening a United States congressperson and that congressperson's family. And so what's included in the record below and what's included in our joint appendix and several of the reports written about Mr. Perkins is that he was following the congressman, that he was showing up places, he actually forced himself into the home of the congressman's elderly parents, and that he was stalking the congressman's wife and daughter to their places of work and out in the community, and that on multiple occasions he threatened to kill them. Also in the record below is Mr. Perkins' longstanding mental illness. The fact that he's never, ever been considered to be in remission, and Your Honors will find that in joint appendix two. Even when medicated, his mental condition is such that the persecutory delusions about the government and about being owed money and about the congressman and politics and Hillary Clinton and Barack Obama, those all continue to persist even when medicated. And there's actually some information in those joint appendix specifically about one of the medications, Olanzapine, that Mr. Perkins didn't take while in the community. And the doctors talk about how that medication stabilizes him, it improves his interactions, and it makes him behaviorally appropriate given that he has schizoaffective disorder, which is a mix of schizophrenia and a bipolar mood-related disorder. And so these medications are incredibly important because even when taking them, he remains mentally ill. And so what the court found when it conditionally released him was not that he's no longer dangerous, but that the specific set of conditions mitigate the risk, the substantial risk of property that he poses to other people. So is it your view, counsel, that once this initial finding is made that Mr. Perkins is a substantial risk, and you've recited all these events, once that finding is made, that finding in effect stays in place, and is it the committee's burden to come forward when there's a question of revoking the conditional release, is it the committee's burden to show that the substantial risk no longer exists? That might have been sort of what Judge Wynn was asking about. What I'm trying to clarify is that once substantial risk has been found with respect to an individual, how does that finding go away so that they're enabled to be released in some capacity? Absolutely, Your Honor. So there are actually two ways written into the statute and into Chapter 313 of the statutes that allow for a committee or for the government to find that the person no longer meets clear and convincing evidence or is mentally ill and dangerous. So the first is the one that we're kind of discussing here today, which is 4246E, and that's for unconditional release or conditional release. And that typically occurs when the director of the facility in which the person is housed files a certificate of either improved mental condition and a request for conditional release or improved mental condition and requests for unconditional release. The other way that we can get to where I think Your Honors are discussing is under 18 USC 4247H, which is the ability to request a hearing to determine the current mental condition of the person. And that would be if Mr. Perkins, for example, believes that he no longer meets criteria for commitment, he could request a hearing before the lower court on that particular issue and then provide this evidence. That's where it gets a little confusing. I mean, you've got E and you've got H, you're right, but we're discussing F, which is the revocation. Yes, Your Honor. As commonsensical as that means, and I could see the appeal to Judge Breda appeals to me too, what you just said in terms of it exists, F is very specific. It says you can be arrested first if you violated a treatment type regimen, this medical, psychiatric, psychological care type regimen. And then it goes on to say the court, after a hearing, determines that you go to a facility in light of his failure. In other words, after making this determination that he's failed to do it, that his continued release will create a substantial risk of bodily injury. Now, that wouldn't square at all with that whole business of it's been there a whole while because that's what F says. It says if you want to get him back, you first determine, did he fail to comply with any of that treatment? And then in light of that, does it create a substantial risk? Does it continue? His continued release, it says continued release would create a substantial risk. Not release from the beginning, but the continued one. That's the problem. And that's where Judge Britt is having a little problem, but I think that statute looks like it's pretty clear there. Judge Britt probably has to say something that, okay, he violated his psychiatric treatment, his medical treatment, but the statute is pretty much specific and says his continued release must show that there's a substantial risk to another person or to a serious property damage to another. It's hard to get around that. I mean, that's where the confusion comes from. And the logic of Judge Britt was appealing to me, although it still appeals to me, to be honest with you. I don't understand how it is you get a conditional release and it means you're at risk, except for these conditions, then you miss them. Seems like me, it's still there. But this F tells you, you got to make that determination to continue, which is why this unpublished opinion went in that direction. And you might see that panel, it was a pretty varied panel that went in that direction there. I might've been a part of some of that, I don't know. Yes, Your Honor. I think you make an excellent point in pointing out the language of 4246F. But I think what that language means is to show why that condition and why the continued release is then problematic. So we know the person's already been adjudicated dangerous. But clarify it for me. It looks pretty clear to me. Read it. It's right there, the last sentence of it. How do you nuance that to say it doesn't mean what it says? It says, in light of his failure to comply with that treatment, his continued release would create a substantial risk. Clarify that. I mean, that's what I want you to do. Stick with that. That's what they say in that section there. Your Honor, I don't think that we require further clarification because Judge Britt, though he admits to being perhaps a little confused about what the court said in United States v. Taylor, that unpublished opinion from 2019, the lower court does go on to provide sufficient reasons why Mr. Perkins should be revoked in light of his failure to comply. And some of the things the court points out is, number one, that Mr. Perkins is going to be homeless, that he's no longer welcome to reside at Fern Terrace based on his behavior. The fact that he threatened and said that several of the members should be dead, that he didn't want to live there, that he didn't believe he needed to comply with the conditions anymore. So he couldn't live there. Some of that's in controversy, I think. And what Judge Wynn is focusing on, and I think it's a concern to all of us, is the analytical or rational linkage be made between the conditions and the results. And I think the question is, how does one get around that? It's apparent from the text, I think. And you're asking this, I think. I mean, you have to give to us the fact that you are filling in a lot of blanks here for the district court on that linkage. Wouldn't you agree that's the case? You have to. Your Honor, I don't think that we're filling in the blanks. I think that the lower court doesn't specifically state the language that Your Honors are referencing from 4246F. But I think that the lower court says a lot of things on the record at the hearing that support that particular finding, such as that Mr. Perkins would be homeless, that there was nowhere else for him to go, that he's got a long-standing mental condition, and that the community, he and the community, would not be served by his continued release. And that language specifically tells us that Judge Brett is considering the fact that- Well, all of that makes imminent common sense. But as our colleagues have pointed out, the statute says his continued release would create a substantial risk of bodily injury. So maybe this just is a matter of- Maybe it goes back to Judge Brett, and he says nothing has changed from the original adjudication because Mr. Perkins says that the people at the facility ought to be killed. Therefore, it's clear that nothing has changed from before, and he has to be committed. I don't know. But it seems like the statute says that because of the violations related to the medical, psychiatric, and psychological care, which would be misconduct of the psychiatrist, for bodily injury going forward. It seems like to me that this may have been not Congress's finest hour in the way they wrote this, but they wrote it that way, and we have to go with it. Well, and Judge Brett does make the- He says the words. He makes the specific finding consistent with 4246F. And so the question then is whether or not he's required to provide the facts on the record that support that finding. And, your honors, the government's position is that it's not required, and that's consistent with this court's holding in United States versus Cornell-Taylor, which said- I'm confused. You mean it's not required to do what? That you simply can say my finding is consistent with subsection F, and he doesn't have to say anything else other than that? The lower court does not have to place specific facts related to the violations in the record in order to revoke the conditional release, where the record before the court as a whole supports the court's findings. And here your- This is Judge Brist's belief. He says that a violation of the order conditional release in itself is a qualification for it, in itself, which tells us he's not reading the last bit of this subsection F that says, and we're dealing with the treatment aspect of it, it says his continued release would create a substantial risk. Where is it other than that? You think you can just say I'm complying with subsection F without doing anything? You think that's enough? No, your honor, and while- It would make our life a lot easier if he could do it. I'm sure Judge Boat feels that way. If you could just say as a trial judge, I'm complying with this section here, whatever it requires, and then walk off. I'm not saying he did that literally, but I'm saying because his belief is, as I said, I think it's premised on this whole conditional, unconditional basis, but the statute says what it says. And there's nothing to indicate he actually did that that I can find in the record. Or is there? That he- On that. Your honor, if the lower court had just done that, had just said, I'm complying with 4246F and you're revoked, I would agree that that wasn't enough, but that's not what happened here. So the lower court does have some commentary, does ask for a bit of clarification, does indicate that a belief that violations in and of itself support revocation, but then goes on to make the findings, to talk about the violation conduct, to talk about Mr. Perkins' specific situation, and to provide more information. And so if it were a full stop, I'm not really sure, I think violating the conditional release is enough, full stop. There would be a different argument here today, but that's certainly not what happened, your honors. And there is plenty of information in the record as a whole, but also in the lower court's to support the idea that all five conditions that Mr. Perkins violated support and prove that in light of those violations, he now poses a substantial risk of bodily injury to another person or serious damage to the property of another. We just can't look at it in a vacuum. We have to look at all of the information we have. And so some of the information we have, for example, is the fact that he said all of the people at Fern Terrace should be dead. And he lists specific people, four specific people. He already wasn't following the rules. He was calling other people living there pretty serious names. He was stealing money from other people, and he was falsifying documents there. Does Judge Brett ever cite to those particular items? I know they're in the record somewhere, but I'm not sure that he referenced them directly. Did he? Judge Brett does reference some of them in the joint appendix at page 139. He talks specifically through some of the conditions, and he finds as a fact that Mr. Perkins violated those conditions. But prior to that, what the lower court does rather than going... Well, what about the one where he says people at this facility he's been at ought to be dead? Does he specifically cite to that? The lower court doesn't specifically cite to that. But what the lower court does is accept into evidence the information provided by the United States Probation Officer. And attached to the United States Probation Officer's violation report is a letter from the director of Fern Terrace. Her name is Valerie Carter. She's the administrator there. And that was before the court. And the court specifically accepts that information into evidence on the record and thus can consider all of that information. And the specific letter that I'm referencing that's attached is found at joint appendix page 92. And it details all of the violation conduct from the administrator's perspective and is then incorporated into the probation officer's report. And so to continue to talk about that violation conduct, we also know that he wasn't charging his GPS, which is not the first time that he's been revoked for that conduct. It's actually the second time he was revoked. And you're right. You're right. That's in the record. No question about it. But I have to tell you, well, pardon me. I look at the transcript of this hearing and I see Appellant's counsel, who is different from the attorney who's arguing today, saying nothing. In essence, she says, quote, the court says, what is his position? Meaning the defendant and your counterpart colleague below says he denies the violations. I'm not even certain that counsel for the appellant below understood the critical linkage that's necessary under the statute. And what's interesting to me about this is this just didn't find its way into a bill at the last minute. This was part of the Crime Control Bill 1983. A gigantic piece of legislation that fundamentally transformed major parts of our criminal courts and how we adjudicate criminal cases. And it didn't just happen in 1983. It had been kicking around for almost a decade. And it was bipartisan. The ranking member at the time on judiciary was now President Biden and Senator Thurmond was the chair. Had a switch over to the Republicans after a long period of control by the Democrats. Ronald Reagan was in the office. And really, you know, what the impetus was for all of these reforms was the attempt at assassination of President Reagan and what happened in the Hinckley case. So there was intense interest by Congress. We should obviously pay close heed to the statute under any circumstances. But particularly here, when you have a bipartisan piece of legislation that had been kicking around for a long time in this exact same version without a word change for years. And to say, well, you know, the conditions were violated and we can infer X, Y, and Z. I just am not certain that's what Congress intended. Yes, Your Honor. I see that my time has expired, but I'd like to answer your question. That that's not what Congress intended. We would agree. But the question is how much information needs to be included in the record. And our position is that the district court's record here from the hearing in June of 2020 is sufficient. And that's based on all of the information. And I wanted to point out that the court did go through all of the specific violation conduct during the first hearing and then adopted that information at the remand hearing. And that's in the joint appendix at page 98 through approximately page 103. I believe it was referenced before a question about where that was located. And so the court took all of that information from the United States probation officer's violation report, which included the letter from the administrator at Fern Terrace. He took all of that into consideration. And that information included in the motion is sufficient. And this court has said in United States v. Taylor, a 2016 case, that that information where the district court had made the findings, however brief, when supported by the motion and the information provided by the government and the probation officer accepted as true as the probation officer is a steward of the court, is sufficient to uphold a finding of the district court's findings. And so what I would ask your honors, unless anyone has any further questions, is that you affirm the findings of the district court and find that it did properly revoke Mr. Perkins' conditional release for some very serious violations of this conditional release plan. And I thank you, your honors. Thank you, Ms. Petrie. If there are no further questions for her, we'll turn back to Ms. Leaston. And you have some time left in rebuttal. Thank you, your honor. So first of all, Judge Agee, you asked us to talk about how this court can craft this decision to give guidance to the district court. And we would just ask that you follow the language, the plain language of 4246F and make it clear that a violation has to be based on a violation of the prescribed treatment regimen, not ancillary conditions that have nothing to do with risk. And the 11th Circuit's decision in the United States versus Crate is very instructive on this issue. And we would ask that you look at that. Also, I think your honors have very rightly zeroed in on this substantial risk that he poses now. The 4246 requires the district court to make a decision about whether his failure to comply with this treatment regimen means that he is now dangerous, not whether he was dangerous back in 2009, whether he's dangerous now. The most recent evidence in the record was that he doesn't pose a danger as long as he complies with the treatment regimen. So follows his medication, gets his psychological treatment, which he was engaging in. There's no evidence that his physical condition had deteriorated or his behavior had changed. And speaking of that, I'd like to just briefly address the government's contention now that he was making threats about these four people. It's very important to realize that was a single sentence in Valerie Carter's letter that someone had told her that he said this. So we're talking about triple hearsay here. The probation officer and the government thought so little of that allegation. They didn't bring it forward at all. You'll notice it's not in the probation officer's report. It's not in the government's motion for revocation. Judge Britt doesn't address it at all. Just like Judge Britt doesn't talk about any of these, doesn't make any findings that he was taking things, that he was doing these other troublesome behavior, that the government is now wishing that Judge Britt had made these findings, but he did not. The concern that Judge Britt had was that Mr. Perkins... We're to go back and just assuming for speculation purposes that Judge Britt or whoever was assigned to it makes these specific findings now that the government presents evidence from witnesses that says Mr. Perkins wanted all these people dead and that sort of thing. Would that be sufficient in your view to permit the cancellation of conditional release? I think the government's going to have to present medical evidence to show that his failure to take medication on two occasions had dropped his medication to sub-therapeutic levels and that he was dangerous. We would very much appreciate an opinion from this court that clarifies the standard, clarifies what Judge Britt should be considering and what he should not be considering. Again, we would just direct this court to United States versus CREPE. I think it's very helpful. Judge Folt, I just have to push back a little bit against the notion that our trial attorney didn't do anything at the hearing. She very clearly made the argument that even assuming that all these violations happen, he still doesn't pose a substantial risk. And we submitted letters, Your Honor, from his mother that had a lot more detail in it. Give me the page in the joint appendix about what you speak, if you would.  I'm frankly interested in seeing exactly about that which you speak. Part of the hearing is found at J-122, if not the entirety of it. I did not see your colleague blown, but please understand I didn't intend to besmirch her credentials or record or defense in this case. I just was observing that she seemed to be as puzzled as Judge Britt. And perhaps the counselor of the United States was as well. I would say on joint appendix 124, I see Ms. Petrick saying good morning. And I may be missing it. Pardon me? Your Honor, so her argument begins on JA-127. She starts talking about these alleged violations, which of course, you know, they are denied. And we did present the letter from his, the two letters from his mother, and one letter presenting very detailed evidence about these alleged violations. But they're focusing on, they're focusing on violations. What I'm talking about is the linkage. She had the chance to make the linkage later on, and in my opinion, didn't do a very convincing job or even a thorough job, frankly, of making that connection. But I may be misreading it. Well, Your Honor, I would just say that it is in fact the government's burden to show that he violated or that he failed to comply with his treatment regimen, and that he now presents a danger because of that failure to comply. And as we don't think the government presents substantial evidence of that, we think that Judge Britt was extremely confused about what he could and couldn't consider in making this revocation determination under 4246F. And for these reasons, Your Honor, we would ask that you would vacate the order of commitment, reverse, and remand this case to Judge Britt to conduct an appropriate hearing. All right. Thanks to counsel for both parties in this case. And I would ask Mr. Coleman to declare a very brief recess, and we'll take about a five-minute break and come back for the next case.
judges: G. Steven Agee, James Andrew Wynn, Frank W. Volk